IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
At Martinsburg

**KARA KOWALSKI,**

    Plaintiff,

v.                                                      Civil Action No. 3:07-CV-147
                                                              Judge John Preston Bailey

**BERKELEY COUNTY PUBLIC SCHOOLS, et al.**

    Defendants.

**MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

COME NOW Defendants, the Berkeley County Board of Education (the "Board"), Manny P. Arvon, III, Ronald Stephens, Becky J. Harden, Buffy Ashcraft and Rick Deuell (collectively the "Individual Defendants"), by and through their attorneys, Tracey B. Eberling and Steptoe & Johnson PLLC, to submit this memorandum in support of their *Motion to Dismiss.*

**I.  PROCEDURAL HISTORY**

The Plaintiff initiated this litigation by filing her complaint in this Court on or about November 9, 2007.  *See* Complaint. After service was made upon the Board and the individual Defendants, these Defendant filed their *Motion to Dismiss* and offer this memorandum in support of that motion.

**II.  STATEMENT OF FACTS**

The Complaint filed in this civil action contains four Counts for relief, three federal and one state law claim, however, the allegations in set forth in the "Jurisdiction" and "Factual Allegations" section of the Complaint appear to contain claims of other alleged Constitutional

violations by the Defendants. The Plaintiff fails to state a claim for relief under any of the theories.

The Plaintiff, Kara Kowalski, was enrolled as a student at Musselman High School during the 2005-2006 academic year. She was a member of the cheerleading squad and was the reigning "Queen of Charm" as a result of the prior year's extracurricular school pageant. According to the Complaint, the Plaintiff created a webpage on MySpace.com from her home computer on December 1, 2005, and on December 2, 2005, the Plaintiff was suspended from school for a period of ten days, which suspension was later decreased to three days. The basis for the suspension, per the Complaint, was the student's creation of a "hate chat room against another student." The Plaintiff was subsequently removed from the cheerleading squad and was not permitted to participate in further "Charm Review" activities.

Based on the suspension and her removal from extracurricular activities, the Plaintiff filed this lawsuit against: the "Berkeley County Schools" (the Board); Manny P. Arvon, III, Superintendent of Schools; Rick Deuell, an Assistant Superintendent; Ronald Stephens, Musselman High School's Principal; Becky J. Harden, Musselman's Assistant Principal; and, Buffy Ashcraft, a teacher and Musselman's cheerleading coach. The Plaintiff purports to states a claim for violation of her civil rights under the First Amendment, as well as the Due Process and Equal Protection Clauses of the U.S. and West Virginia Constitutions, for Cruel and Unusual Punishment, and also for violation of the Privileges and Immunities Clause, allegedly resulting from the Defendants' taking the disciplinary actions. A state law claim of negligent infliction of emotional distress was included. For the Court's convenience, each of the claims will be addressed separately.

### III.  APPLICABLE STANDARDS

The Plaintiff herein can prove no set of facts to support any of her claims, therefore, the dismissal of all Counts of the Complaint as to each of the Defendants is clearly indicated by Rule 12 (b)(6) of the Federal Rules of Civil Procedure. If each of the facts alleged by the Plaintiff are taken as true, and viewed in a light most favorable to her, this Court cannot but find Plaintiff has failed to state a claim against the Defendants upon which relief can be granted.  In *Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1965 (2007), the U.S. Supreme Court recently clarified the application of the Rule 8 pleading requirements and ruled a civil complaint must include more than "labels and conclusions, and a formulaic recitation of a cause of action's elements." (*Internal citations omitted*).

The Plaintiff's Complaint fails both legally and factually to state a claim against any of the Defendants. Accordingly, this Court should dismiss Plaintiff's action for failure to state a claim upon which relief can be granted pursuant to the provisions of Fed. R. Civ. P. 12(b)(6).

### IV.  ARGUMENT

**A.     Plaintiff Fails to State a Claim Against the Berkeley County Board of Education**

**1.     Plaintiff Makes No Allegations Against the Board of Education**

The Plaintiff's Complaint's sole mention of the Berkeley County Board of Education is in paragraph 5 of the Complaint, in which she alleges that this Defendant is "a public school district doing business in Berkeley County, West Virginia." In order to recover against a political subdivision under 42 U.S.C. §1983, it must be alleged that the entity had a policy or practice that violated a person's constitutional or other legal rights. *Monell v. Dept. of*

*Social Services*, 436 U.S. 658 (1978). Mere employment of an alleged tortfeasor is insufficient as respondeat superior is not the proper basis for recovery against a political subdivision. *Id.* at 692. The Plaintiff makes no reference to the Board in her pendent state law claim, and as such, fails to state a claim against the Board under that theory.

As the Plaintiff fails to even attempt to state a claim against the Berkeley County Board of Education upon which relief can be granted under either federal or state law, the Board must be dismissed as a defendant to this civil action.

    **2.**    **The West Virginia Governmental Tort Claims and Insurance Reform Act Bars The Claims Against the Board**

The liability of the Board of Education, a "political subdivision," and its employees, must be determined under the Governmental Tort Claims and Insurance Reform Act. *See generally* W. Va. Code §§ 29-12A-1 to -17 (1999). The Supreme Court of Appeals of West Virginia instructed in *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996), that "local governmental units should be entitled to qualified immunity from suit under § 1983, or statutory immunity under W. Va. Code, 29-12A-5(a), *unless it is shown by specific allegations that the immunity does not apply*." Id. at 148, 479 S.E.2d at 658 (citation omitted) (emphasis added). Because the Plaintiff in this case failed to show by any specific allegations that these immunities do not apply, dismissal of this action is clearly warranted.

    **B.**    **The Individual Defendants Must be Dismissed**

In Counts I, II, and III of her Complaint, the Plaintiff alleges that "the Defendants" caused a deprivation of the Plaintiff's rights and privileges under various provisions of the U.S. and West Virginia Constitution in violation of 42 U.S.C. § 1983. These claims fail as a matter of

law.  First, the Board does not have a policy or practice which violates the Plaintiff's constitutional rights, nor has the Plaintiff made such an allegation. Those Defendants sued in their individual capacities are entitled to qualified immunity.  For these reasons,  the Individuals Defendants' *Motion to* Dismiss must be dismissed granted.

         **1.**        **Plaintiff Fails to State a Claim Against Manny P. Arvon, III**

Manny P. Arvon, III must be dismissed as a Defendant to this civil action.  The Plaintiff, as with the Board of Education, makes only passing reference to Mr. Arvon to identify his position as Superintendent of the school district.   The caption of the Complaint indicates that he is sued only in his official capacity.  Mr. Arvon is not subject to liability under  a theory of respondeat superior under 42 U.S.C. §1983: any such claim against him must be based on a claim that he had actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk and an affirmative causal link between his inaction and the constitutional injury suffered by the plaintiff.  *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999).  In the absence of any assertion regarding the alleged actions or inactions of Mr. Arvon, he, too, must be dismissed as a party to this litigation.

         **2.**        **The Plaintiff Cannot Sustain Her 42 U.S.C. § 1983 Action Against the Individual Defendants**

               **a.**        **The Plaintiff Cannot Sustain Her § 1983 Claim Because the Plaintiff Did Not Allege that the Board Had a Policy or Practice Of Violating Students' Constitutional Rights**

The Plaintiff named Manny P. Arvon, III and Rick Deuell as Defendants in only their official capacities, and Ronald Stephens, Becky J. Harden, and Buffy Ashcraft as Defendants in both their individual and official capacities.  The distinction between the two

capacities is critical in § 1983 litigation. The Supreme Court has unambiguously stated "that official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3104 (1985)). In other words, a suit against a government official in his or her official capacity is tantamount to a claim against the governmental entity itself. Thus, claims against governmental officials in their official capacity should be treated as a suit against the agency. *See Id*. While a plaintiff may establish *personal* liability in a § 1983 action by demonstrating that a government official, acting under color of state law, caused the deprivation of a federal right, "[m]ore is required in an official capacity action." *Graham*, 473 U.S. at 166, 105 S. Ct. at 3105. Stated another way, a governmental entity "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036. To recover in an official-capacity suit, the governmental agency's "policy or custom must have played a part in the violation of federal law." Id. (internal quotations and citations omitted).

      In this case, the Plaintiff has not alleged that any policy or practice of the Board violated her constitutional rights. The Plaintiff, therefore, fails to state a claim against the Individual Defendants in their official capacity upon which relief can be granted.

      **b.**      **The Individual Defendants Did Not Violate Any Clearly Established Right Of The Plaintiff; therefore, They Are Immune From Liability In Their Individual Capacities Under the Doctrine of <u>Qualified Immunity</u>**

The Plaintiff named Ronald Stephens, Becky J. Harden and Buffy Ashcraft as Defendants in both their "official capacity" and "individually." Each of the Defendants is entitled to qualified immunity with regard to any claims against them in their individual capacity. Thus, this *Motion to Dismiss* must be granted.

The basic purpose of qualified immunity is to shield government officials performing their duties from the burdens of trial and the threat of monetary liability. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Without such an immunity, the operations of government would be immobilized. *See Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). Government officials would not perform their discretionary duties vigorously but would act timidly to avoid the risk of being haled into federal court. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038 (1987); S. Ct. 2727. Society also would bear substantial costs including "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Harlow*, 457 U.S. at 814, 102 S. Ct. at 2736; *Tarantino v. Baker*, 825 F.2d 772, 774 (4th Cir. 1987). To limit these costs, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986). Thus, government officials forfeit this defense only where a reasonable official would

have known that an action violated clearly established constitutional rights. *Harlow,* 457 U.S. at 818, 102 S. Ct. 2738; *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (en banc).

The requirement that a right be clearly established ensures that officials have ample notice of the legal standards that govern their conduct. *See Davis v. Scherer*, 468 U.S. 183, 195, 104 S. Ct. 3012, 3019 (1984). Consistent with this need for notice, a court must identify the right infringed at a high level of particularity. *Anderson*, 483 U.S. at 639, 107 S. Ct. 3039; Winfield, 106 F.3d at 531. To define the right too abstractly would convert the defense of qualified immunity "into a rule of virtually unqualified liability." *Anderson*, 483 U.S. at 639, 107 S. Ct. 3039; *see also DiMeglio v. Haines*, 45 F.3d 790, 803-04 (4th Cir. 1995). Plaintiff bears the burden of demonstrating that the federal rights allegedly violated were clearly established. *See Ross v. State of Alabama*, 15 F. Supp.2d 1173, 1181 (M.D. Ala. 1998).

> This burden is not easily discharged: that qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities.

Id. (internal quotations and citations omitted). Thus, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Swanson v. Powers,* 937 F.2d 965, 969 (4th Cir. 1991) (quoting *Anderson,* 483 U.S. at 640, 107 S. Ct. 3039). In fact, "for qualified immunity to be denied, pre-existing law must dictate, that is, truly compel . . . the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Ross,* 15 F. Supp.2d at 1182 (quoting *Flores v. Satz,* 137 F.3d 1275, 1277 (11th Cir. 1998)).

"A right is clearly established if it has been authoritatively decided by the United States Supreme Court, the appropriate circuit court of appeals, or the highest state court where the challenged official act occurred." *Wheeler v. Gilmore,* 998 F. Supp. 666, 669 (E.D. Va. 1998) (citing as examples *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992); *Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir. 1980)). Such a rule is necessary because "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992) (citations omitted). In the present matter, none of the allegations against the Individual Defendant suggest that they "transgress[ed] any bright lines." The Plaintiff has not alleged nor provided any statutes or case law showing that any of the Individual Defendants violated a "clearly established right." In fact, no ***clearly established*** rights exist under these circumstances as will be discussed below.

The Individual Defendants named "individually" are entitled to qualified immunity and the claims against them should be dismissed.

> C.   **The Individual Defendants Are Entitled to Dismissal Under the Statutory Immunity Conferred by the West Virginia Tort Claims and Insurance Reform Act**

The Plaintiff's Complaint against these Defendants fails to state a claim upon which relief can be granted under West Virginia law. The West Virginia Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 et seq., prohibits a direct claim of personal liability from being asserted against an employee of a political subdivision, unless three exceptions apply. No exceptions have been alleged by the Plaintiff in this case nor do any apply

to the facts as asserted in Plaintiff's Complaint.  Therefore, the Individual Defendants are entitled to have the Plaintiff's claims against them dismissed as a matter of law.

Common law governmental tort immunity for a Board of Education, and its employees, was abolished by *Ohio Valley Contractors v. Board of Education of Wetzel Co.*, 170 W.Va. 240, 293 S.E.2d 437 (1982).  In response, the West Virginia legislature in 1986 enacted the West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 et seq.  The Berkeley County Board of Education is a "political subdivision" under the Act. West Virginia Code § 29-12A-3©.  The Individual Defendant are "employees" of the "political subdivision" under West Virginia Code § 29-12A-3(a).  West Virginia Code § 29-12A-5(b)(2) states:

> An employee of a political subdivision is immune from liability unless one of the following applies:
>
> (1)     his or her acts or omissions are manifestly outside the scope of employment or official responsibilities;
>
> (2)     his or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner or;
>
> (3)     liability is expressly imposed upon the employee by a provision of this Code.

Justice Cleckley writing for a unanimous Court in *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996), clearly expressed the judicial policy supporting dismissal of claims asserted against the employees of a political subdivision.  "The public interest is that the official conduct of the officer is not to be impaired by constant concern about personal liability." *Hutchison*, 479 S.E.2d at 658.  "The policy considerations driving such a rule are straight forward: public servants exercising their official discretion in the discharge of their duties cannot

live in constant fear of lawsuits, with the concomitant costs to the public servant and society." *Id*. "Immunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not be subject to the burden of trial at all. The very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case." *Id*.

In *Beckley v. Crabtree*, 189 W.Va. 94, 428 S.E.2d 317 (1993), the plaintiff's claims against the Defendant Sheriff Crabtree were dismissed pursuant to West Virginia Code § 29-12A-5(b). In that case, Sheriff Crabtree was placing a shotgun in the trunk of his patrol car when the shotgun accidentally discharged, injuring the plaintiff. The plaintiff alleged negligent handling of the shotgun and argued against dismissal. The West Virginia Supreme Court of Appeals held that under these facts "there is no indication that the Sheriff committed any acts with malicious purpose, in bad faith, or in a wanton or reckless manner." *Beckley*, 428 S.E.2d at 319.

In *Moore v. Wood County Board of Education*, 200 W.Va. 247, 489 S.E.2d 1 (1997), a junior high school student was injured when he was thrown to the ground by another student while waiting for the school bus at the school. The students parents filed a lawsuit alleging negligent supervision, including claims against the school principal directly. The West Virginia Supreme Court of Appeals found that "the Complaint nor the supporting materials contained any indication that Mr. Keiger [principal] acted outside of the scope of his employment or that he acted with a malicious purpose, in bad faith, or in a reckless manner." *Moore*, 489 S.E.2d at 5. The Court then affirmed a grant of summary judgment in favor of the high school principal.

In *Holsten v. Massey*, 200 W.Va. 775, 490 S.E.2d 864 (1997), the West Virginia Supreme Court of Appeals analyzed what type of conduct might constitute the wanton or reckless conduct under West Virginia Code § 29-12A-5(b)(2). The Court, relying upon Prosser, Handbook of the Law of Torts, p. 185(4th ed. 1971), stated the following:

> The usual meaning assigned to "wilful," "wanton" or "reckless," according to taste to the word used, is that the actor has *intentionally* done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow. It usually is accompanied by a *conscious* indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

*Holsten*, 490 S.E.2d at 877.

In *Holsten*, the plaintiff's wife was killed in a motor vehicle collision with Russell Massey, who was intoxicated at the time. Approximately four months prior to the accident in question, Massey was involved in an accident with another vehicle resulting in a death. That accident was investigated by the defendant Deputy Sheriff Greene. Massey was not arrested nor incarcerated as a result of the prior motor vehicle collision. The plaintiff alleged that the defendant deputy sheriff failed to properly investigate the prior accident, and if he had done so, the subsequent accident would have been prevented. The West Virginia Supreme Court of Appeals held that these alleged acts or omissions, even if assumed to be true as alleged, did not rise to the level of wanton or reckless conduct, as a matter of law. The *Holsten* Court went so far as to hold that under "the totality of the evidence presented, the record could not lead a rational trier of fact to find [for the Plaintiff]." *Id.* at 878.

Likewise, it is <u>not</u> alleged in the Plaintiff's Complaint that the Individual Defendants, intentionally or consciously acted to injury the Plaintiff. The Plaintiff's Complaint speaks only in terms of alleged failures and negligent acts or omissions. The Plaintiff's Complaint contains allegations that the actions of these Defendant employees were within the scope of their employment. The Plaintiff's Complaint makes no assertion that liability is expressly and personally imposed upon these Defendant employees by a provision of this Code. The Plaintiff's Complaint also fails to assert that these Defendant employees' act or omissions were "with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" The Individual Defendants, therefore, are immune from the Plaintiff's claims and are entitled to have the Plaintiff's claims against them dismissed.

The Plaintiff's allegations do not state a claim upon which relief can be granted against these political subdivision employees. Thus, the Plaintiff's Complaint against the Individual Defendants must be dismissed as a matter of law.

      **C.**      **Plaintiff Fails to State a Claim for Violation of Her First Amendment Rights**

A public school student's First Amendment rights are not without limit. It is well established that schools may properly limit student speech and impose sanctions , even for off campus speech. In *Bethel School District v. Fraser,* 478 U.S. 675, 682 (1986), the U.S. Supreme Court recognized that "the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings." The allegations set forth in the Plaintiff's Complaint do not suggest that the webpage created by the Plaintiff is subject to First Amendment protection nor that the Defendants improperly infringed her rights.

A student barred from participating in student government elections for her off campus webpage sought a preliminary injunction challenging the action in *Doninger v. Niehoff*, ___ F. Supp.2d___, 2007 WL 2523753 (D. Conn. 2007).  The *Doninger* court noted that "[t]here can be no question that teaching students the values of civility and respect for the dignity of others is a legitimate school objective. *See, e.g., Morse*, 127 S.Ct. at 2626; *Fraser*, 478 U.S. at 683. The Supreme Court put it as follows in *Fraser*:

> The process of educating our youth for citizenship in public schools is not confined to books, the curriculum, and the civics class; schools must teach by example the shared values of a civilized social order. Consciously or otherwise, teachers-and indeed older students-demonstrate the appropriate form of civil discourse and political expression by their conduct and deportment in and out of class. Inescapably, like parents, they are role models. The schools, as instruments of the state, may determine that the essential lessons of civil, mature conduct cannot be conveyed in a school that tolerates lewd, indecent, or offensive speech and conduct ...

*Fraser,* 478 U.S. at 683.   The *Doninger* court noted that the requirement that a district show that the student speech at issue caused a "substantial disruption" necessary when addressing political speech per *Tinker v. Des Moines Independent School District*, 393 U.S. 503 (1969), does not apply when the speech is "vulgar, offensive, or otherwise contrary to the school's mission to inculcate the habits and manners of civility."  *Doninger*, at 11 (citations omitted).

The Plaintiff in this case was subject to discipline under the Berkeley County Board of Education's Harassment, Bullying and Intimidation Policy as the Plaintiff's webpage contained material impugning another student.  No allegation in the Complaint suggests that the webpage was a political statement or was otherwise protected speech.  The Plaintiff's summary

assertion that the "Defendants lack any authority to subject the Plaintiff to disciplinary action at school for using her home computer......" fails to state a claim for violation of her First Amendment rights and must be dismissed.

> **D.      The Plaintiff's Received Due Process Prior to the Imposition of Discipline to the Extent Required**

In asserting her claims in Count II of the Complaint for the alleged violation of her Due Process and Equal Protection Rights, the Plaintiff claims that the Defendants had no policy that would put her on notice that she could be disciplined for her "private out of school use of the internet or the establishment of an internet webpage." Complaint ¶37. Further, she claims the Defendants failed to provide an appeal process or notify Plaintiff of any such appeal process through which she could appeal the decision to suspend her out of school for three (3) days." *Id.*, ¶38. Finally, the Plaintiff claims that she did not received notice and/or an opportunity to be heard before being excluded from the cheerleading squad and "charm review." None of the allegations state a claim upon which relief can be granted.

> **1.      Plaintiff Was On Notice of School Policies, Including Appeals Process**

All Berkeley County School students receive a copy of the Student Handbook which includes the Student Code of Conduct and Harassment, Bullying & Intimidation policy. The appeals procedure for addressing student discipline is also a part of the documents. The Plaintiff admits that she was a student at a Berkeley County high school, and having received the documents, she was on of notice of the type of conduct that could subject her

to discipline under that policy and the process to challenge discipline imposed on any basis. Based on these facts, the Plaintiff's claim of lack of notice fails to state a cognizable claim.

### 2. Plaintiff Does Not State a Claim for Violation of Due Process Rights for Exclusion from Extracurricular Activities

Participation in extracurricular activities does not rise to the level of a constitutionally protected property or liberty interest. *Truby v. Broadwater*, 332 S.E.2d 284 (1985); *Farver v. Board of Education*, 40 F. Supp.2d 323 (D. Md. 1999). As such, students are not entitled to procedural due process associated with these activities. *See Truby and Farver*. Accordingly, the Plaintiff fails to state a claim under 42 U.S.C. §1983 for the being removed from the cheerleading squad and for being barred from further participation in the "Charm Review" proceedings at the high school. All claims related to the Plaintiff's exclusion from these activities should be dismissed.

### E. Plaintiff Does Not State a Claim for Violation of Equal Protection Rights

The Plaintiff's Complaint contains several bald assertions that her right of equal protection of law was violated by the "Defendants' actions." The caption of Count II of the Complaint is styled "42 U.S.C. §1983;VIOLATION OF CONSTITUTIONAL RIGHT OF DUE PROCESS EQUAL PROTECTION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES AND WEST VIRGINIA CONSTITUTION. The Plaintiff summarily alleges in paragraph 40 that she "was injured by the Defendants in violation of her right to due process and equal protection, to wit: she suffered loss of enjoyment of life emotional distress, depression, embarrassment, humiliation, and pain and suffering as a direct result of Defendants' actions as set forth herein."

The Plaintiff's allegations are remarkably similar to those of the Plaintiff in *Doninger v. Niehoff*, ___ F. Supp.2d___, 2007 WL 2523753 (D. Conn. 2007). While that court was considering whether a preliminary injunction would issue to forestall disciplinary action against the plaintiff student, its discussion in evaluating the plaintiff's likelihood of success on the merits of an equal protection claim is instructive. That court noted that the plaintiff therein did not claim to have been singled out because of her membership in a protected class, therefore, her equal protection claim was governed by *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). The *Doninger* court discussed that

> [u]nder *Olech*, a plaintiff essentially claims that she was irrationally treated differently from other people who are similarly situated. Importantly, for a plaintiff to demonstrate that he or she was treated differently from similarly situated individuals in an irrational manner, in violation of the Fourteenth Amendment, the plaintiff must demonstrate that she is "prima facie identical" to the comparators. *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir.2005). Furthermore, a plaintiff must show that: (I) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Doninger*, at 17 (Citations omitted).

Plaintiff Kara Kowalski does not claim to be a member of a protected class nor that she was irrationally treated differently from other people who are similarly situated. On this basis, she fails to state a claim for violation of her Equal Protection rights upon which relief can be granted.

F. **Plaintiff Does Not State a Claim for Cruel and Unusual Punishment**

The Eighth Amendment of the U.S. Constitution and Section 5, Article III of the West Virginia Constitution protects citizens from cruel and unusual punishment. The United States Supreme Court in *Ingraham v. Wright*, 430 U.S. 651 (1977) expressly ruled that the Cruel and Unusual Punishment Clause of the Eighth Amendment did not apply to the use of corporal punishment in public schools and upheld the dismissal of a student's action filed pursuant to 42 U.S.C. §1983. *See also Smith v. W. Va. Board of Education*, 170 W. Va. 593, 295 S.E.2d 680 (1982)(declining to address whether the West Virginia Constitution's provision against cruel and unusual punishment was implicated by the imposition of corporal punishment in public schools, but citing *Ingraham*).

The *Ingraham* Court carefully analyzed the history of the application of the Eighth Amendment and noted that it had been held by the Supreme Court only to serve to protect those convicted crimes. The plaintiff's contention that it should be extended to protect children from paddling was rejected. In this case, the Plaintiff's three day suspension from school, removal from the cheerleading squad, and her inability to further participate in the "Charm Review" while perhaps distressing to her, certainly do not constitute criminal punishment. Count III of the Complaint must be dismissed as the Eighth Amendment has no application to these facts.

G. **Plaintiff Does Not State a Claim for Violation of the Privileges and Immunities Clause**

To the extent that the Plaintiff's attempts to set forth a claim for violation of the Privileges and Immunities Clause, Article IV, section 2, clause 1 of the U.S. Constitution, she is not entitled to relief under such a theory based on the allegations set forth in the Complaint. See

Complaint ¶30. The Privileges and Immunities Clause of the U.S. Constitution "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *O'Reilly v. Board of Appeals*, 942 F.2d 281 (4th Cir. 1991). The Plaintiff is alleged to be a citizen of the State of West Virginia and nothing in the Complaint suggests that her right to privileges in any other State have been abridged, particularly by employees of the Berkeley County Board of Education. On this basis, the Plaintiff also fails to state a claim against the Defendants under that constitutional provision, and the claim must be dismissed as a matter of law.

### H. Plaintiff's Allegations Do Not State a Claim for Negligent Infliction of Emotional Distress

The West Virginia Supreme Court in *Brown v. City of Fairmont*, 2007 WL 4150988, recently clarified the elements that must be shown for recovery under the theory of negligent infliction of emotional distress:

> Although physical injury is no longer a necessary element of a negligent infliction of emotional distress claim, such a cause of action generally must be premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety....

*Id.*, (citing *Lipton v. Unumprovident Corp.*, 10 A.D.2d, 783 N.Y.S. 2d 601 (N.Y. App. Div. 1994)). The plaintiff in *Brown* sought to recover for the defendants' allegedly negligent handling of his pension benefits and the dismissal of his claim under this theory was upheld on appeal .

The Plaintiff herein similarly fails to allege that any conduct of any Defendant, particularly that of Defendant Ronald Stephens (the only Defendant referenced by name in Count IV of the Complaint), that implicated her physical safety. As such, the Plaintiff's claim for

recovery under Count IV of the Complaint fails to state a claim upon which relief can be granted against any of the Defendants and the Plaintiff's state law claim, too, should be dismissed.

WHEREFORE, the Defendants respectfully request that this Honorable Court grant their *Motion to Dismiss.*

Respectfully submitted this 5th day of December, 2007.

**BERKELEY COUNTY BOARD OF EDUCATION, MANNY P. ARVON, III, RONALD STEPHENS, BECKY J. HARDEN, <u>BUFFY ASHCRAFT and RICK DEUELL</u> By Counsel**

/s/   **Tracey B. Eberling**

_____
Tracey B. Eberling, Esq.  (WVSB#6306)
STEPTOE & JOHNSON
1250 Edwin Miller Blvd.
P.O. Box 2629
Martinsburg, WV 25402
(304) 262-3532