IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION

KARA KOWALSKI,

    Plaintiff

  v.                                                           Civil Action No. 3:07-CV-147
                                                                   Judge John Preston Bailey

BERKELEY COUNTY PUBLIC SCHOOLS, et al.

    Defendants.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS

      COMES NOW your Plaintiff, Kara Kowalski, and objects to Defendants' Motion to Dismiss on the following grounds:

      1.      The complaint filed in this matter fully complies with Rule 8(a) and (e) of the Federal Rules of Civil Procedure.  Furthermore, Rule 8(f) requires that all pleadings be so construed as to do substantial justice.

      2.      The court must accept as true the allegations in the complaint and cannot dismiss the complaint unless it appears to a certainty that the Plaintiff would be entitled to no relief under any state of facts which could be proved in support of her claim. [*Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969)] A complaint should not be dismissed merely because a court doubts the plaintiff will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted [*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1987)]  Generally, a motion to dismiss for failure to state a claim will not be granted

unless it is certain that the plaintiff could prove no set of facts that would entitle him to relief. [*Mylan Labs., Inc. v. Matkari,* 7 F.3d. 1330, 1334 (4th Cir. 1993)]

    3.    Defendants, in their Motion to Dismiss, raise the issue of qualified immunity. A Plaintiff is not required to anticipate the defense of immunity in his complaint. [*Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d.572(1980)] Where the issue of qualified immunity is raised, the procedure urged by the West Virginia Supreme Court in *Hutchinson v. City of Huntington,* 198 W.Va. 139, 479 S.E.2d 649 (1996) is to require the Plaintiff to file a reply under Rule 7 setting forth more detail if needed, however, if the information contained in the pleadings is sufficient to justify the case proceeding further, the early motion to dismiss should be denied.

    4.    The action against the Board of Education is filed pursuant to Federal Civil Rights Law, not state law, except for the claim of negligent infliction of emotional distress. Federal law controls whether the Board of Education or any other Defendant is entitled to qualified immunity, not West Virginia Code § 29-12A-1 to -17.  Further, there is no allegation that the Board of Education is being sued under the doctrine of respondeat superior. The Board (or other persons sued in their official capacity) can be held liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. [*Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978)]  Defendants' in their Memorandum of Law state that Plaintiff was disciplined pursuant to the Student Code of Conduct and Harassment, Bullying & Intimidation policy.  These are policies of the Board of Education

implemented by Mr. Arvon, Mr. Deuell, Mr. Stephens, and Ms. Hardy. Further, Plaintiff was excluded from cheerleading based on a policy adopted by the Board of Education and implemented by Ms. Ashcraft and Mr. Stephens.

  6. Defendants' argument that the educators and administrators are unaware of the United States constitution and the rights protected there under such as freedom of speech, due process and equal protection and are, therefore, entitled to qualified immunity for the violation of those rights is disingenuous.  If the Defendants are unaware of such basic constitutional principals then they would clearly fall within the "plainly incompetent" category of Defendants who are not entitled to qualified immunity [*Malley v. Briggs,* 475, U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986)]   Government officials forfeit the defense of qualified immunity where a reasonable official would have known that an action violated clearly established constitutional rights. [*Harlow v. Fitzgerald,* 47 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)]   There has been a long line of United States Supreme Court cases going back to 1969 clearly setting forth when a school can censor student expression: *Tinker v. Des Moines Indep. Comm. Sch. Dist.,* 393 U.S. 503 (1969) (School officials can censor student-initiated expression only if they can reasonably forecast that student speech will cause a substantial disruption of school activities. The case involved students wearing black armbands to protest U.S. involvement in Vietnam); *Hazelwood School District v. Kuhlmeier,* 484 U.S. 260 (1986)(School officials can censor most *school-sponsored* student expression if they can articulate a reasonable educational reason for their actions. The case involved a principal censoring school newspaper articles on teen pregnancy and divorce.); *Bethel School District No. 403 v. Fraser,* 478 U.S. 675(1986) (School officials did not violate the First Amendment rights

3

of a student who was suspended for giving a vulgar speech *before the student assembly*). Many lower court decisions have also been issued: *Beussink v. Woodland R-IV School District,* 30 F. Supp.2d 1175 (E.D. Mo. 1998) (Student created a webpage at home that criticized the school administration. The page contained vulgar language and a hyperlink to the school's official site. The principal suspended the student for 10 days because he found the site offensive. A reviewing federal district court ruled in favor of the student writing, "Disliking or being upset by the content of a student's speech is not an acceptable justification for limiting student speech under *Tinker"*); *Coy v. Board of Education of the North, Canton City Schools*, 205 F.Supp.2d 791 (N.D. Ohio 2002) (Middle school disciplined a student for creating an offensive Web site on his own computer containing a section on "losers" and the pictures of boys the student claimed were "losers". The student accessed his site on school computers. A federal district court determined that there was a factual issue as to why the school punished the student. It writes: "If the school disciplined Coy [the student] purely because they did not like what was contained in his personal website, the plaintiffs will prevail".)  *Emmett v Kent School District,* 92 F.Supp.2d 1088 (W.D. Wash.. 2000) (Student created a Web page at home and posted a mock obituary of two of his friends. The school responded by suspending the student and prohibiting him from participating in extracurricular activities. A federal district court ruled in favor of the student and implied that schools do not have authority to punish the student for his off-campus conduct.); *J.S. v. Bethlehem Area School District,* 807 A.2d 847 (Pa. 2002) (Student created a Web site that mocked his principal and his math teacher. The site contained much offensive commentary about the math teacher and even included a reference to why "she should die…give me $20 to help pay

4

for a hitman." School officials expelled the student, claiming that the site was a true threat. The Pennsylvania Supreme Court ruled that the site was not a true threat but still ruled in favor of the school, reasoning that under *Tinker* and *Fraser* the school should prevail. The court wrote: "We hold that where speech that is aimed at a specific school and/or its personnel is brought onto the school campus or accessed at school by its originator, the speech will be considered on-campus speech."); *Killion v. Franklin Regional School District,* 136 F.Supp.2d 446 (W.D. Pa. 2001) (Student created a Web site at home that contained unflattering "top 10" list about the school's athletic director. The student e-mailed his list to fellow students at home. The material found its way to campus and the student was suspended. A federal district court applied *Tinker* and determined that the speech, while offensive, did not create a substantial disruption.); *Layshock v. Hermitage School District,* 412 F.Supp.2d 502 (W.D. Pa.2006) (High school student created an online parody of his principal off-campus on his grandmother's computer. School officials responded by suspending student and then placing him in alternative education. Before a trial on the merits, a federal district court denied the plaintiffs' a temporary restraining order, finding that the school officials had presented evidence that the Web site had created a substantial disruption of school activities, including a temporary ban on student access to the school's computer system.); *Mahaffey v. Aldrich,* 236 F.Supp.2d 779) (E.D. Mich. 2002) (Student created a Web page mentioning Satan and "people I wish would die." The site later stated: "Now that you've read my web page please don't go killing people and stuff and them blaming it on me." The school disciplined the student who filed a federal lawsuit. The federal district court

ruled in favor of the student, finding that "there is no evidence that the website interfered with the work of the school or that any other student's rights were impinged.")

Off particular interest is *Saxe v. State College Area School District*, 240 F.3d 200 (3rd Cir.2001) in which the court under Circuit Judge Alito (now a United States Supreme Court Justice) struck down a school's harassment policy as unconstitutionally overbroad because it covered substantially more speech than could be prohibited under *Tinker's* substantial disruption test. This decision makes clear that schools can not violate student's First Amendment rights under the guise of prohibiting harassment or a hostile environment even at school much less for off school activities where there is no requisite disruption of the school environment or interference with learning. Unmentioned by the Defendant's is the fact that the Plaintiff herein posted no comment on her web page about another student, school personnel, or anyone else.

   5. Plaintiff's due process and equal protection claims can not be dismissed based on Defendants' suggestion that she could not meet the test set forth in *Village of Willowbrook v. Oleck,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) particularly where over 90 million people are registered MySpace.com users, the majority of which are teenagers and evidence will show that many Berkeley County Students have MySpace pages and have not been suspended for having them. Further, argument made in reliance on an unpublished case, ie. *Donniger v. Neihoff,* should be disregarded as the case was not provided nor was a hard copy of the Motion and Memorandum ever served on or provided to Plaintiff's counsel.

   For the reasons set forth hereinabove, the Plaintiff prays that the Defendants' Motion to Dismiss be DENIED and the Defendants' be required to file an answer to the

complaint and provide the discovery requested by the Plaintiff within the time period set forth therein.

KARA KOWALSKI
By counsel

_____/s/ **Nancy A. Dalby**_____
Nancy A. Dalby
NANCY A. DALBY, ATTY AT LAW, PLLC
202 N. Charles Street
Charles Town, WV 25414
(304) 728-2063
WV Bar # 4351