IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION

KARA KOWALSKI,

      Plaintiff

    v.                                                                    Civil Action No. 3:07-CV-147
                                                                          Judge John Preston Bailey

BERKELEY COUNTY PUBLIC SCHOOLS, et al.

      Defendants.

PLAINTIFF'S RESPONSE TO
<u>DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT</u>

      COMES NOW your Plaintiff, Kara Kowalski, and objects to Defendants' Motion

to Dismiss Amended Complaint on the following grounds:

**A. The Individual Defendants Are Not Entitled to Immunity Under the Elementary
and Secondary Education Act**

      The Elementary and Secondary Education Act ("No Child Left Behind") was not

intended to shield teachers or other school personnel from liability for harming a student

by violating that student's constitutional rights and recklessly, wantonly, and negligently

causing that student severe emotional distress.  This is clearly stated in the Act as set

forth in Defendants' memorandum, to-wit:  the teacher is not liable for harm only if the

harm was not caused by willful misconduct, gross negligence, reckless misconduct or a

conscious, flagrant indifference to the rights or safety of the individual harmed by the

teacher.  The Act is clearly intended to allow teachers to create a learning environment in

the classroom or school environment not to sanction or protect the overreaching of school

personnel who attempt to invade a student's private life and control off school behavior

that has no relationship to the classroom or the school environment.  The Defendants fail

to offer any support or precedence for the proposition that the Act is implicated in Civil

Rights actions by students or any tort claim based on injuries to students made by school

personnel for non-student/non-school sponsored activities or expression.

**B.**    **Defendants Are Not Entitled to Immunity Pursuant to 42 U.S.C. § 1983 or Under West Virginia Law**

    **1.**    **Ms. Kowalski's Amended Complaint States a Claim Against the Board of Education, Manny Arvon and Rick Deuell.**

Defendant claims that the following allegations in the Amended Complaint fail to

state a claim against the Board of Education, Manny Arvon and Rick Deuell:

> 52.    Defendants Deuell and Arvon acted with deliberate indifference to the decisions of Stephens, Harden and Ashcraft and/or to the misapplication of the board's Harassment, Bullying and Intimidation policy which resulted in the violation of Plaintiff's right of free speech.
>
> 53.    The Defendant School Board's Harassment, Bullying and Intimidation policy violated Plaintiff's right of free speech in so much as it is overbroad and/or ambiguous so as to call for or allow discipline for non-student/non-school sponsored speech, i.e. private out of school speech.
>
> 54.    The Defendant School Board maintains, allows and condones a practice and custom of disciplining students for non-student/non-school sponsored speech, i.e. private out of school speech, in violation of their rights of free speech as was evidenced by the suspension of Plaintiff and approximately twelve (12) other students for joining the MySpace group.
>
> 55.    The Defendant School Board acted with deliberate indifference to the risk of violation of student rights by failing to provide appropriate training to its personnel on the implementation of the School Board's Harassment, Bullying and Intimidation Policy.

Defendants attempt to truncate the allegations to fit their argument making such

statements as "It is also summarily alleged that the Board 'maintains, allows and

condones a practice and custom of disciplining students for non-student/non-school

sponsored speech…" without including the language of the allegation that ties it to a

specific incidence of such practice. (See Page 5 of Defendants' Memorandum)  Providing specific acts supporting the allegation is not making a summary statement or general formulaic allegation.

Ms. Kowalski moved to Amend her complaint based in part on knowledge learned from disclosures by the school board that in fact Mr. Arvon knew about the suspension of Ms. Kowalski and the other students and allowed the decisions of Mr. Stephens and  Mr. Deuell, to whom Ms. Kowalski's father had appealed the suspension, to stand. The court must accept as true the allegations in the complaint and cannot dismiss the complaint unless it appears to a certainty that the Plaintiff would be entitled to no relief under any state of facts which could be proved in support of her claim. *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969) A complaint should not be dismissed merely because a court doubts the plaintiff will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1987)  Generally, a motion to dismiss for failure to state a claim will not be granted unless it is certain that the plaintiff could prove no set of facts that would entitle him to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d. 1330, 1334 (4th Cir. 1993)

**2.     Defendants Stephens, Harden and Ashcraft Violated Clearly Established Constitutional Rights of the Plaintiff and Are Not Entitled to Qualified Immunity**

Defendants, in their Motion to Dismiss, raise the issue of qualified immunity. A Plaintiff is not required to anticipate the defense of immunity in his complaint. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d.572(1980) Where the issue of qualified immunity is raised, the procedure urged by the West Virginia Supreme

3

Court in *Hutchinson v. City of Huntington,* 198 W.Va. 139, 479 S.E.2d 649 (1996) is to

require the Plaintiff to file a reply under Rule 7 setting forth more detail if needed,

however, if the information contained in the pleadings is sufficient to justify the case

proceeding further, the early motion to dismiss should be denied.   Defendants' argument

that the educators and administrators are unaware of the United States constitution and

the rights protected thereunder such as freedom of speech, due process and equal

protection and are, therefore, entitled to qualified immunity for the violation of those

rights is disingenuous.  If the Defendants are unaware of such basic constitutional

principals then they would clearly fall within the "plainly incompetent" category of

Defendants who are not entitled to qualified immunity *Malley v. Briggs,* 475, U.S. 335,

341, 106 S.Ct. 1092, 1096 (1986) Government officials forfeit the defense of qualified

immunity where a reasonable official would have known that an action violated clearly

established constitutional rights. *Harlow v. Fitzgerald,* 47 U.S. 800, 818, 102 S.Ct. 2727,

2738 (1982)

There has been a long line of United States Supreme Court cases going back to

1969 clearly setting forth when a school can censor student expression: *Tinker v. Des*

*Moines Indep. Comm. Sch. Dist.,* 393 U.S. 503 (1969) (School officials can censor

student-initiated expression only if they can reasonably forecast that student speech will

cause a substantial disruption of school activities. The case involved students wearing

black armbands to protest U.S. involvement in Vietnam); *Hazelwood School District v.*

*Kuhlmeier,* 484 U.S. 260 (1986)(School officials can censor most *school-sponsored*

student expression if they can articulate a reasonable educational reason for their actions.

The case involved a principal censoring school newspaper articles on teen pregnancy and

divorce.); *Bethel School District No. 403 v. Fraser,* 478 U.S. 675(1986) (School officials did not violate the First Amendment rights of a student who was suspended for giving a vulgar speech *before the student assembly*). Many lower court decisions have also been issued: *Beussink v. Woodland R-IV School District,* 30 F. Supp.2d 1175 (E.D. Mo. 1998) (Student created a webpage at home that criticized the school administration. The page contained vulgar language and a hyperlink to the school's official site. The principal suspended the student for 10 days because he found the site offensive. A reviewing federal district court ruled in favor of the student writing, "Disliking or being upset by the content of a student's speech is not an acceptable justification for limiting student speech under *Tinker*"); *Coy v. Board of Education of the North, Canton City Schools,* 205 F.Supp.2d 791 (N.D. Ohio 2002) (Middle school disciplined a student for creating an offensive Web site on his own computer containing a section on "losers" and the pictures of boys the student claimed were "losers". The student accessed his site on school computers. A federal district court determined that there was a factual issue as to why the school punished the student. It writes: "If the school disciplined Coy [the student] purely because they did not like what was contained in his personal website, the plaintiffs will prevail".) *Emmett v Kent School District,* 92 F.Supp.2d 1088 (W.D. Wash. 2000) (Student created a Web page at home and posted a mock obituary of two of his friends. The school responded by suspending the student and prohibiting him from participating in extracurricular activities. A federal district court ruled in favor of the student and implied that schools do not have authority to punish the student for his off-campus conduct.); *J.S. v. Bethlehem Area School District,* 807 A.2d 847 (Pa. 2002) (Student created a Web site that mocked his principal and his math teacher. The site contained

much offensive commentary about the math teacher and even included a reference to why "she should die...give me $20 to help pay for a hitman." School officials expelled the student, claiming that the site was a true threat. The Pennsylvania Supreme Court ruled that the site was not a true threat but still ruled in favor of the school, reasoning that under *Tinker* and *Fraser* the school should prevail.  The court wrote: "We hold that where speech that is aimed at a specific school and/or its personnel is brought onto the school campus or accessed at school by its originator, the speech will be considered on-campus speech."); *Killion v. Franklin Regional School District,* 136 F.Supp.2d 446 (W.D. Pa. 2001) (Student created a Web site at home that contained unflattering "top 10" list about the school's athletic director. The student e-mailed his list to fellow students at home. The material found its way to campus and the student was suspended.  A federal district court applied *Tinker* and determined that the speech, while offensive, did not create a substantial disruption.); *Layshock v. Hermitage School District,*  412 F.Supp.2d 502 (W.D. Pa.2006) (High school student created an online parody of his principal off-campus on his grandmother's computer. School officials responded by suspending student and then placing him in alternative education. Before a trial on the merits, a federal district court denied the plaintiffs' a temporary restraining order, finding that the school officials had presented evidence that the Web site had created a substantial disruption of school activities, including a temporary ban on student access to the school's computer system.); *Mahaffey v. Aldrich,* 236 F.Supp.2d 779) (E.D. Mich. 2002) (Student created a Web page mentioning Satan and "people I wish would die."  The site later stated: "Now that you've read my web page please don't go killing people and stuff and then blaming it on me."  The school disciplined the student who filed a federal

6

lawsuit. The federal district court ruled in favor of the student, finding that "there is no evidence that the website interfered with the work of the school or that any other student's rights were impinged.")

Of particular interest is *Saxe v. State College Area School District*, 240 F.3d 200 (3rd Cir.2001) in which the court under Circuit Judge Alito (now a United States Supreme Court Justice) struck down a school's harassment policy as unconstitutionally overbroad because it covered substantially more speech than could be prohibited under *Tinker's* substantial disruption test. This decision makes clear that schools can not violate student's First Amendment rights under the guise of prohibiting harassment or a hostile environment even at school much less for off school activities where there is no requisite disruption of the school environment or interference with learning. Unmentioned by the Defendant's in their Motion to Dismiss and Memorandum is the fact that the Plaintiff herein posted no comment on her web page about another student, school personnel, or anyone else.

The question in all of these cases is not whether students have a constitutional right of free speech but under what circumstances, if any, such speech can be regulated. If the Defendant's arguments were accepted we would never know because all of these cases would have been dismissed based on qualified immunity protections. The fact that all of these cases went forward on the merits supports the fact that qualified immunity does not operate to dismiss cases based on government sponsored violations of constitutional rights. As Justice Alito stated in his concurring opinion in the recently decided case of *Morse v. Frederick*, 127 S.Ct. 1507 (2007):

> The opinion of the Court correctly reaffirms the recognition in *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 506 (1969), of the

fundamental principle that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Id. at

The opinion of the Court does not endorse the broad argument advanced by petitioners and the United States that the First Amendment permits public school officials to censor any student speech that interferes with a school's "educational mission". This argument can easily be manipulated in dangerous ways, and I would reject it before such abuse occurs. (References to briefs omitted) Id. at

In Ms. Kowalski's case, she never even got to the "schoolhouse gate". Her non-student/non-school sponsored speech was censored by the school. If she didn't shed her constitutional rights even at the schoolhouse gate then she clearly had those rights outside of the school yard—i.e. those rights were clearly established, as recognized by the United States Supreme Court, when the Principal acted to suspend her and strip her of activities and honors she had earned throughout her school career.

The Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1-17 (1999) does not protect the Board or the other Defendants from liability in this matter as argued by the Defendants.   West Virginia Code § 29-12A-4(c)(2) provides, in pertinent part, that a political subdivision, i.e. The Board, is liable in damages in a civil action for loss to persons allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental function specifically when caused by the negligent performance of acts by their employees while acting within the scope of employment. The Board (or other persons sued in their official capacity) can be held liable when an alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978)

8

Defendants' admit that Plaintiff was disciplined pursuant to the Student Code of Conduct and Harassment, Bullying & Intimidation policy.  These are policies of the Board of Education implemented by Mr. Arvon, Mr. Deuell, Mr. Stephens, and Ms. Hardy. Further, Plaintiff was excluded from cheerleading based on a policy adopted by the Board of Education and implemented by Ms. Ashcraft and Mr. Stephens.  A government official, acting under color of state law, is subject to personal liability in a §1983 action for causing deprivation of a federal right and official-capacity liability where the governmental agency's policy or custom plays a part in the violation. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)

Once again the Defendants ignore the language of the Amended Complaint.  They argue that under W.Va. Code § 29-12A-5(b), employees of political subdivisions are immune from personal tort liability unless their acts or omissions were manifestly outside of the scope of the employment or official responsibility, were made with a malicious purpose, in bad faith, or in a wanton and reckless manner, or liability is expressly imposed under the employee by a statutory provision. They then incredulously state "No exceptions have been alleged by the Plaintiff in this case nor do any apply to the facts as asserted in the Plaintiff's Amended Complaint".  A quick check of the document filed with the court shows that the entire Amended Complaint was in fact filed including the following paragraphs:

> 84.    Defendants Stephens, Harden, Ashcraft and Deuell were negligent, wanton and reckless in disciplining Plaintiff for speech or actions that did not violate any school policy.
>
> 85.    Defendants Stephens, Harden, Ashcraft and Deuell were negligent, wanton and reckless in publishing false information about Plaintiff to third parties.

86.     That as a direct and proximate result of the negligence, wantonness and recklessness of Defendants Stephens, Harden, Ashcraft and Deuell, the Plaintiff suffered damage to her reputation, loss of enjoyment of life, severe emotional distress, depression, embarrassment, humiliation, and physical injury all resulting in conscious pain and suffering.

87.     That Defendant Stephens imposed discipline on the Plaintiff as aforesaid in bad faith to please another student with whom she had a special relationship causing the Plaintiff to suffer damage to her reputation, loss of enjoyment of life, severe emotional distress, depression, embarrassment, humiliation, and physical injury all resulting in conscious pain and suffering.

87.     That at graduation practice for 2005-2006 school year, Defendant Stephens, without warning and against her will, hugged Plaintiff and whispered in her ear in front of the other students maliciously, and with wanton and reckless disregard, causing her extreme humiliation, embarrassment and emotional distress.

Granted reading a complaint is not the most scintillating activity and these allegations did come near the end but they are allegations made by Ms, Kowalski nevertheless.

### B. Plaintiff States a Claim for Violation of Her First Amendment Rights

Defendants state in their Memorandum that it is well established that schools may properly limit student speech and impose sanctions—even for off campus speech. This is an apparent attempt to blur the distinction between *student speech* and *non-student speech*. There is no authority for the proposition that everything said by a person—who happens to be a student—is student speech. In fact the cases sited by the Defendants make it clear—even in the passages sited by the Defendants—that the ruling in those cases applies only to student speech and expression. The U.S. Supreme Court has made it clear in every case sited by the Defendants that there must be a substantial connection between the speech sought to be sanctioned and the operation of the school. There is no

connection between Ms. Kowalski setting up a MySpace.com account at home using her own computer and her own internet account and the operation of the school.  The only arguable disruption to the operation of the school was caused by the school personnel suspending 12 students.  Defendants offer up *Pangle v. Bend-Lapine School Dist.*, 10 P.3d 275 (Or. App. 2000) to support their argument that off-campus speech can be sanctioned by the school. But there is no comparison to the facts in Ms. Kowalski's case. In *Pangle*, the student wrote articles about how to hurt people and disrupt the school and distributed them at school.  Ms. Kowalski said nothing on her MySpace.com site much less advocated violence or disruption of the school.  Nor did Ms. Kowalski even access her MySpace page at school.  The only time anything was taken to school was by a student who was unhappy about a picture someone else had posted to the site without Ms. Kowalski's knowledge.  One of the justifications sited by the U.S. Supreme Court in *Morse, supra,* for allowing a principal to discipline the student who unfurled the banner saying "Bong Hits 4 Jesus" at a school sponsored activity was the emergency nature of the action to remove what was considered speech that encouraged the use of drugs. In Ms. Kowalski's case there was no such emergency situation.  No harm would have come from the school personnel taking the time to consult with the superintendent or the school attorney to get advice on what Ms. Kowalski's rights (and the rights of twelve other students) were or to fully investigate what the true nature of the MySpace group was— social networking as opposed to a "hate chat room".  Instead, the principal acted in accordance with the custom and practice prevalent in the Berkeley County Schools— allowing principals to believe, and to act as if, they can do what ever they want, whether they have a legal right to do so or not, without considering the harm.  Every case sited by

Defendants involved the punishment at school of the originator of off-campus speech that substantially disrupted or foreseeably could substantially disrupt the work of the school. These cases, if known to any of the school personnel, could not possibly have created a question as to whether the school had the right to sanction off-campus speech that had no affect whatsoever on the work of the school and especially whether the school could sanction a person who was not even the originator of the complained of speech. That a student who had a special relationship with the principal complained to him about someone else's posting on the MySpace site can in no way justify the discipline of Ms. Kowalski and the violation of her rights. Further, Defendants' reliance on *Donniger v. Neihoff,* 527 F.3d 41(2nd Cir. 2008) is misplaced. *Donniger* involved a student who posted a blog on the internet referring to school administrators as "douchebags" and encouraging others to contact the superintendent "to piss her off more" which the court found foreseeably created a risk of substantial disruption within the school environment. In the present case, Ms. Kowalski said nothing on her MySpace page. She did not mention a student, a school teacher or administrator and she did not encourage any one to do anything much less to do anything that would cause disruption in or to the school environment. Ms. Kowalski was punished for doing nothing which is just the opposite of why the student in *Donniger, supra,* was punished. Nor did Ms. Kowalski provide an otherwise non-existent or inaccessible medium or forum for others to publish comments that someone might not like or take offense at. Anyone with internet access can set up an account on MySpace.com or any one of numerous other social networking sites, blog sites, chat rooms, bulletin boards, or other forums for expression and post anything they want.

The Defendants go on to once again ignore the plain language of the Amended Complaint and state "Plaintiff has alleged no pattern or practice that violated her right to free speech by the Defendant Board and those defendants sued in their official capacities should be dismissed." The Amended Complaint reads as follows:

> 34. That the Defendant school board has a pattern of practice or custom of violating students' free speech rights, to-wit: approximately twelve (12) students at Musselman High School other than Plaintiff were suspended for joining the web page group started by the Plaintiff and making such comments on the page as "I love you Kara" or "lol" among others.

While Defendants make a bald statement that "It is abundantly clear that Plaintiff cannot meet the test necessary to overcome the qualified immunity due to those defendants sued in their individual capacities" they go on to point out that "it may be difficult for the court to agree" what the contours are of a student's right to free speech off campus. As set forth in the Defendants' own memorandum, the issue of immunity cannot be reached until a determination is made as to whether or not there has been a constitutional violation. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)

## C.  Plaintiff States a Claim for Violation of Her Rights Under the Fifth Amendment to the U.S. Constitution

### a.  Plaintiff Does State a Claim for Violation of Due Process Rights for Exclusion From Cheerleading and Charm Review.

Cheerleading and Charm Review are more than "extracurricular activities". Inclusion in both of these activities were earned and are tied to academic achievement and standards of conduct set by the school. These activities are honors bestowed upon a deserving or successful student not merely activities one can simply chose to participate in at will such as the bible club or ski club. Being chosen to participate in these activities carries with it prestige and recognition. And being removed from these activities carries

13

with it shame, humiliation and loss of valuable experiences that can aid in admission to

college or other organizations.  Because of the valuable, earned nature of these activities,

Ms. Kowalski had a property interest in participating in them and was entitled to due

process before being removed from such participation.

> **b.  Plaintiff Does State a Claim for Violation of Due Process Rights for Failure to Provide an Appeal Process**

Ms. Kowalski was denied an appeal outlined in the Berkeley County Schools'

Student Handbook under the Harassment, Intimidation and Bullying Policy because

Defendant Stephens, the principal, failed to carry out his required duties thereunder.   The

said policy requires as follows:

> The building Principal is the person responsible for
> receiving oral or written complaints of racial, sexual,
> religious/ethnic or disability harassment or violence or
> bullying and/or intimidation a the building level.  Upon
> receipt  of a complaint of student conduct, the Principal
> must notify the Berkeley County Board of Education's
> Human Rights Officer promptly, and shall commence an
> investigation of the complaint.  Upon completing the
> investigation, and not later than ten (10) working days of
> receiving  the complaint, a written report will be forwarded
> to the Human Rights Officer and to the Superintendent.
>
> Upon the conclusion of the investigation, a written report detailing
> the investigator's findings and his or her recommended
> consequences must be presented to the Superintendent, the alleged
> harasser(s) and the complainant.

Ms. Kowalski never received a written report from Principal Stephens which

triggers a ten (10) day appeal period to the Superintendent.  And even though Ms.

Kowalski's father went to Mr. Deuell, an assistant superintendent and the designated

Human Rights officer, and appealed the suspension, Mr. Deuell never required Principal

Stephens to follow the procedures outlined above or noticed Mr. Kowalski of the right to

appeal the findings and suspension to the Superintendent.  Rather, he unilaterally reduced the 10 day suspension to 5 days.

Based on the above, Ms. Kowalski's due process rights were clearly violated with the knowledge and complicity of the school board.

**E.      Plaintiff Does State a Claim Under the Eighth Amendment for Cruel and Unusual Punishment**

Neither the U.S. Constitution nor the State Constitution limit the Eighth Amendment to criminal process or institutions.  It is clearly intended to limit  persons acting under color and authority of law from doing so by imposing cruel and unusual punishment on persons over whom they exercise control and discipline.  School systems clearly have disciplinary powers as we have seen from the cases sited hereinbefore.  And school personnel are clearly state actors imbued with the power to punish.  In *Morse, supra,* Justice Alito, in his concurring opinion describes schools thusly:

> The public schools are invaluable and beneficent institutions, but they are, after all, organs of the State.  When public school authorities regulate student speech, they act as agents of the State; they do not stand in the shoes of the students' parents.  It is a dangerous fiction to pretend that parents simply delegate their authority—including their authority to determine what their children may say and hear—to public school authorities.  It is even more dangerous to assume that such a delegation of authority somehow strips public school authorities of their status as agents of the State.  Most parents, realistically, have no choice but to send their children to public school and little ability to influence what occurs in the school.  It is therefore wrong to treat public school officials, for purposes relevant to the First Amendment, as if they were private, nongovernmental actors standing *in loco parentis.*

Clearly, public school authorities have significant power to discipline and control the environment of the school with little ability of outside agents including parents or students to influence their actions.  In this regard, public schools are very much like penal institutions and should be subject to the Eighth Amendment protections.  What happened

to Ms. Kowalski was in no way similar to a child being paddled—an act which ends with the last stroke.  Instead, with out the provision of due process as required, she was stripped of valuable rights and honors which she had earned, a punishment that exposed her to extreme humiliation and embarrassment and caused her to suffer from depression and to be shunned and ostracized by teachers and other pupils with whom she had previously had good relations and from whom she received praise and respect.  The cruel punishment even caused her to develop  a life threatening coping disorder.

Ms. Kowalski's cruel and unusual punishment presents a strong  good faith argument for the extension of the Eighth Amendment protections to the school setting  to the extent that they have been limited to cases involving criminal process or incarceration.

F.      **Plaintiff Does State a Claim for Equal Protection Under the Fourteenth Amendment to the United States Constitution**

Defendants' arguments put forth on this issue are simply specious.  Ms. Kowalski has sufficiently set forth an allegation of irrational disparate treatment.  Her claim should only be dismissed if the Defendants can show or the court can find that she can not prove by any set of facts that she was treated differently than countless other students who have MySpace accounts on which they and others talk with each other and make comments.  Ms. Kowalski neither said anything about another student or controlled what others may have posted on her space any more than any other student who has a similar MySpace account.  No case law supports the disparate treatment of one student to please another with whom one has a special relationship as happened in this case.  Plaintiff should be allowed to go forward with her proof of such disparate treatment.

**G.   The Court Has Jurisdiction to Entertain Count V.  Plaintiff's Declaratory Judgment Claim**

The Board's Harassment, Intimidation and Bullying Policy is still in effect and violation of students' First Amendment rights under its implementation is capable of repetition, yet evading review.  It does not matter whether or not the Plaintiff is potentially a victim of its unconstitutional provisions.  It is enough that the policy is unconstitutional and someone can be hurt by it before this court can review it.

**H.   Plaintiff is Entitled to An Injunction**

Through Defendants' argument on this issue they attempt to try the case by making false allegations that Plaintiff has admitted to some wrong doing.  This is ridiculous.  Plaintiff has stated vehemently that she did nothing wrong and certainly denies that she created a "hate chat room against another student" when she merely opened a MySpace account and invited others to join with no different motive than other MySpace account holder—social networking. The Defendants' then try to back door an admission in the guise of "nor does Plaintiff deny that the said page contained what could be considered hate speech directed at another student".  The Plaintiff has never been called on to deny such contrived allegation that the MySpace page contained hate speech. Plaintiff has never said that anything anyone placed on the page did contain hate speech. If the Plaintiff shows and a jury agrees that the Plaintiff did nothing for which the school had the authority to discipline her, the referral should be removed from her record.

**I.   Plaintiffs Allegations State a Claim for Negligent, Wanton, Reckless and Malicious Infliction of Emotional Distress**

The court must accept as true the allegations in the complaint and cannot dismiss the complaint unless it appears to a certainty that the Plaintiff would be entitled to no

17

relief under any state of facts which could be proved in support of her claim. *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969) A complaint should not be dismissed merely because a court doubts the plaintiff will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1987)  Generally, a motion to dismiss for failure to state a claim will not be granted unless it is certain that the plaintiff could prove no set of facts that would entitle him to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d. 1330, 1334 (4th Cir. 1993)

Defendants' again attempt to try the case in their memorandum by making up facts and admissions by the Plaintiff and arguing the "evidence". This job must be left to the trier of fact after the presentation of evidence admitted under the rules of evidence.

Plaintiff has sufficiently set forth a claim for negligent, wanton, reckless and malicious infliction of emotional distress and it should not be dismissed unless the Defendants can show that under no set of facts can the Plaintiff prevail.  Plaintiff suffered severe life threatening disorders due to the actions of the Defendants and she should have the opportunity to present her case to the trier of fact.

## CONCLUSION

The Plaintiff has sufficiently set forth her claims in the Amended Complaint and the Amended Complaint nor any of the claims set forth therein should be dismissed for failure to state a claim against the Defendants or any of them.  As is widely accepted, a motion to dismiss for failure to state a claim will not be granted unless it is certain that the plaintiff could prove no set of facts that would entitle him to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d. 1330, 1334 (4th Cir. 1993)

WHEREFORE,  Plaintiff respectfully requests that the court deny the Defendants'

Motion to Dismiss the Amended Complaint.

Respectfully submitted this 9th day of July, 2008.

KARA KOWALSKI
By counsel

/s/ Nancy A. Dalby
Nancy A. Dalby
NANCY A. DALBY, ATTY AT LAW, PLLC
202 N. Charles Street
Charles Town, WV 25414
(304) 728-2063
WV Bar # 4351