IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**KARA KOWALSKI,**

    **Plaintiff,**

v.                                                                        Civil Action No.   3:07CV147
                                                                         (BAILEY)

**BERKELEY COUNTY PUBLIC SCHOOLS, et al.,**

    **Defendants.**

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**I.**    Introduction

This matter comes before the Court for consideration of Defendants' Motion to Dismiss Amended Complaint (Doc.40), the Plaintiff's Response (Doc. 48), and the Defendants' Reply (Doc. 50). As indicated in the motion, defendants seek dismissal of all seven counts of the Amended Complaint on a number of independent grounds. For the reasons and to the extent stated below, **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **GRANTED IN PART AND DENIED IN PART**.

**II.**    Factual Background

This case concerns civil rights claims brought by a former highschool student against her former school, school officials, and cheerleading coach for disciplinary action she received as a student for her role as moderator in a MySpace group. The underlying facts of that disciplinary action are as follows.

In December of 2005, plaintiff, using her home computer, created a chat group

through MySpace.com, a social networking cite, and invited a number of friends to join. In doing so, group members received access to post comments and other information on a group page. In addition, group members were free to post comments and information without the permission of other group members or the creator of the group, who MySpace labels "group moderator."

Subsequently, an unnamed group member posted an altered picture of a fellow student on the group page. As a result, the depicted student complained to school personnel and the posting was removed. Ultimately, the plaintiff claims that she was unaware of the posting, did not take part in the posting, and did not comment on the posting, which was viewable on the group page for less than one day. However, as a result of this incident, plaintiff received a 10-day school suspension with a 90-day social suspension for creating a "hate chat room against another student" in violation of the school's Harassment, Bullying and Intimidation Policy ("the School Board's Policy").

Following the pronouncement of this punishment, plaintiff's father spoke to Assistant Superintendent Rick Deuell, who reduced plaintiff's school suspension from 10 days to 5 days. In addition to school and social suspension, the plaintiff claims that she was prevented, by her Cheerleading Coach, Buffy Ashcraft, and Principal, Ronald Stevens, from participating in cheerleading and "charm review activities," of which plaintiff was the "reigning Queen of Charm." (Doc. 35, p. 4).

III.   Procedural Background

As a result of the foregoing, on June 11, 2008, plaintiff filed her Amended Complaint (Doc. 35). There, plaintiff alleges the following claims: (1) violation of her right to free speech under the United States and West Virginia Constitutions for punishment received

under the School Board's Policy; (2) violation of her due process rights under the United States and West Virginia Constitutions due to the failure of the School Board's Policy to provide sufficient notice of the conduct prohibited and due to the School Board's failure to provide a sufficient appeal process for the disciplinary action; (3) violation of her right to equal protection under the United States and West Virginia Constitutions resulting from the School Board's decision not to suspend or discipline other students maintaining similar pages on social networking cites; and (4) violation of her right to be free from cruel and unusual punishments as provided for by the 8th Amendment to the United States Constitution and West Virginia Constitution.  Moreover, Count 7 of the Amended Complaint alleges claims for negligent and intentional infliction of emotional distress against plaintiff's former Assistant Superintendent, Principal, Vice-principal, and Cheerleading Coach for their conduct in connection with the disciplinary process.

In addition to the preceding causes of action, plaintiff's Amended Complaint contains requests for both declaratory and injunctive relief.  As noted in Count 5, plaintiff seeks a declaratory judgment finding the School Board's Policy unconstitutionally overbroad and/or vague.  Similarly, Count 6 of the Amended Complaint requests an injunction requiring the School Board to expunge the discipline referral and notation of suspension from plaintiff's school records and requiring the School Board to send corrected copies of plaintiff's records to any third parties that previously received transcripts.

In response to the above, the defendants filed their Motion to Dismiss Amended Complaint (Doc. 40) on June 25, 2008.  There, the defendants argue that they are entitled to immunity under the provisions of the Secondary Education Act and under the protections afforded to political subdivisions and their employees in defending actions brought under

42 U.S.C. § 1983 under federal and state law. In regard to plaintiff's remaining claims, the defendants assert that the due process challenges are misplaced because participation in extracurricular activities is not a constitutionally protected liberty interest, because the plaintiff received fair notice of the School Board's Policy and the appeals process in the student handbook, and because plaintiff's father successfully sought a reduction in the suspension's duration from the Assistant Superintendent. Moreover, the defendants argue the plaintiff's claim under the 8th Amendment must fail because the prohibition against cruel and unusual punishments arises solely in the application of criminal law. Additionally, the defendants contend that dismissal of plaintiff's equal protection claim is warranted because plaintiff failed to show that others similarly situated received different treatment. Furthermore, defendants allege that plaintiff's challenge to the School Board's Policy on vagueness and overbreadth grounds is moot, as the plaintiff is no longer subject to the policy. Finally, the defendants contend that plaintiff is not entitled to injunctive relief on the face of her Complaint and that plaintiff has failed to allege sufficient injury and conduct to establish claims for negligent and intentional infliction of emotional distress under West Virginia law.

IV.     Legal Standard

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." **McNair v. Lend Lease Trucks, Inc.**, 95 F.3d 325, 328 (4th Cir. 1996) (citing **Rogers v. Jefferson-Pilot Life Ins. Co.**, 883 F.2d 324, 325 (4th Cir. 1989). When reviewing a motion to dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff.  ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243-44 (4th Cir. 1999).  When rendering its decision, the Court should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice.  ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995).

V.   Discussion

As an initial matter, the Court finds defendants' arguments for dismissal predicated on immunity to be improper in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  This Court notes that immunity is a defense to an otherwise viable claim and not an indictment of the underlying claim's viability.  ***Gomez v. Toledo***, 446 U.S. 635, 640 (1980) (stating that "this Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action; instead we have described it as a defense available to the official in question")).  Therefore, the Court finds that defendants' arguments in favor of immunity are outside of the scope of this inquiry.  As such, **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **DENIED IN PART**, to the extent of the immunity rationales contained therein.

Conversely, the Court finds that dismissal of Count 1 of the Amended Complaint, charging a deprivation of plaintiff's First Amendment rights to free speech, is justified.  In Count 1 of her Amended Complaint, plaintiff alleges a violation of her First Amendment rights to free speech on two independent grounds.  First, plaintiff contends that the

application of the School Board's Policy violated her rights to free speech. Secondly, the plaintiff generally alleges that she was chilled from engaging in otherwise protected speech for fear that she would be disciplined under the School Board's Policy. Because the rationales supporting dismissal of each theory of recovery are distinct, each will be dealt with in turn.

In regard to plaintiff's claim that application of the School Board's Policy violated her First Amendment rights to free speech, the plaintiff has failed to satisfy the constitutional requirements for standing mandated by Article III. As noted by the United States Supreme Court:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury alleged and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560 (1992) (citations omitted). In the case at bar, plaintiff has failed to allege that she was disciplined under the School Board's Policy for engaging in speech protected by the First Amendment. To the contrary, the plaintiff has consistently maintained that she had no part in the posting of the altered photograph, did not comment on the posting, and was not disciplined for any comment she made. As such, the plaintiff has failed to allege an invasion of her legally protected interest in speech protected by the First Amendment and, therefore, has not pled a claim capable of sustaining relief.

Similarly, dismissal of plaintiff's First Amendment claim predicated on the chill

rationale is appropriate. Here, plaintiff's sole allegation is that the School Board's Policy "had a chilling effect on Plaintiff's right to free speech for the remainder of her time in the public school." (Doc. 35, p. 9). However, "[i]n the First Amendment context, allegations of 'subjective chill' of free speech rights will not suffice to satisfy the injury-in-fact requirement. *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Rather, a plaintiff must demonstrate some specific present or future objective harm that the challenged regulation has inflicted by deterring him from engaging in protected activity." *Brooklyn Legal Services Corp. v. Legal Services Corp.*, 462 F.3d 219, 226 (2d Cir. 2006). Therefore, because the plaintiff has failed to specifically identify a present or future harm resulting from the alleged chill, the plaintiff has failed to plead a viable First Amendment claim under the chill rationale. Accordingly, **Defendants' Motion to Dismiss Amended Complaint (Doc. 40) is GRANTED IN PART**, as it relates to Count 1 of the Amended Complaint (Doc. 35).

Turning next to Count 2 of the Amended Complaint (Doc. 35), the plaintiff maintains that her due process rights were violated in three ways. Initially, the plaintiff contends that the School Board's Policy did not offer her sufficient notice that her conduct, which did not occur on school grounds or at a school-related function, was proscribed. Secondly, the plaintiff argues that the School Board failed to follow its own appeal process in disciplining the plaintiff or that the appeals process provided was insufficient. Thirdly, plaintiff claims that her due process rights were violated when she was prevented from cheerleading and Charm Review without notice or a hearing.

After review, the Court finds that the defendants have failed to make the necessary showing to warrant dismissal of plaintiff's due process challenge predicated on a lack of

notice.  This Court notes that the challenged School Board's Policy reads as follows:

> The Berkeley County Board of Education prohibits any form of racial, sexual, religious/ethnic and disability harassment or violence or any bullying or intimidation by any student, school employee or member of the public, during any school-related activity or during any education-sponsored event, whether in a building or other property owned, use [sic] or operated by the Berkeley County Board of Education.

(Doc. 35, p. 4).  In addition, the law is well-settled that "[a] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." **Monell v. Department of Social Services of City of New York**, 436 U.S. 658, 691 (1978).  Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is reasonable under § 1983." *Id.* at 694.

In recognition of the above, the Court finds that after accepting all allegations of the plaintiff's claim as true, the defendants have failed to show that plaintiff is incapable of securing relief.  Here, because application of the School Board's Policy to students engaged in conduct not on school grounds or at school functions could clearly be considered a policy or custom, the plaintiff has pled a viable due process claim based on lack of notice.

Likewise, dismissal of plaintiff's due process challenge to the sufficiency of the appeal process is improper at this time.  Here, plaintiff alleges that she was denied a sufficient appeal process or that the appeal process provided did not comport with the standards outlined in the student handbook.  In response, the defendants contend that the plaintiff was given notice of the appeals process in the student handbook, and further that plaintiff's father successfully appealed the decision resulting in the reduction of plaintiff's

suspension from 10 to 5 days. However, because the defendants' contentions require consideration of matters outside the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice, they are more properly the subject of a motion for summary judgment. *See* **Anheuser-Busch,** 63 F.3d at 1312. Thus, because the plaintiff has pled a facially viable cause of action regarding the deprivation of her due process rights in connection with the appeal process, dismissal under Fed. R. Civ. P. 12(b)(6) is improper.

Alternatively, dismissal of plaintiff's due process challenge based on her exclusion from cheerleading and Charm Review is warranted. To this end, the law is well-settled that "[b]ecause participation in interscholastic athletics or other nonacademic extracurricular activities does not rise to the level of a constitutionally protected property or liberty interest, there is no entitlement to any procedural due process protections." **Truby v. Broadwater**, 175 W. Va. 270, 287 (1985); *see also* **Farver v. Board of Educ. of Carrol County**, 40 F. Supp. 2d 323, 324 (D. Md. 1999) (noting that, "the Due Process Clause, under authority from both the Fourth Circuit and other courts, has clearly been held not to protect the interest of a child in participating in extracurricular activities (including sports)").

In support of her claim, the plaintiff argues that "Cheerleading and Charm Review are more than extracurricular activities" because "[i]nclusion in both of these activities were [sic] earned and are [sic] tied to academic achievement and standards of conduct set by the school." (Doc. 48, p. 13). However, the same can be said for virtually all extracurricular activities and, thus, plaintiff has failed to meaningfully distinguish cheerleading and Charm Review from the host of extracurricular activities deemed insufficient to serve as a

constitutionally protected liberty or property interest. Therefore, the plaintiff has failed to state a claim under this theory of recovery, and **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **GRANTED IN PART**, as it relates to plaintiff's due process challenge predicated on exclusion from cheerleading and Charm Review as contained in Count 2 of the Amended Complaint (Doc. 35) and **DENIED IN PART**, as it relates to plaintiff's due process challenges based on lack of notice and sufficiency of appeal.

Concerning Count 3 of the Amended Complaint (Doc. 35), the plaintiff asserts a "class-of-one" equal protection claim alleging that she was treated "differently in an irrational manner from other Berkeley County Board of Education Students who were similarly situated, i.e. who initiated and maintained MySpace web pages or web pages on other social networking sites on the Internet, and who were not suspended or disciplined under the Harassment, Bullying and Intimidation Policy." (Doc. 35, p. 11). In response, the defendants argue that dismissal is proper because the plaintiff has failed to allege that she was treated differently from other similarly situated persons because she failed to allege that "other students' web pages contained materials similar to those found on her own website, nor that anyone complained about those web pages." (Doc. 41, p. 26).

"[T]he Supreme Court has recognized the validity of 'class of one' Equal Protection claims, 'where the plaintiff alleges that she has been irrationally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Willis v. Town of Marshall*, 426 F.3d 251, 263 (4th Cir. 2005) (quoting *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Moreover, in light of recent Fourth

Circuit precedent, this Court is not prepared to find plaintiff's failure to allege that others similarly situated received complaints about their web pages dispositive in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* **Willis**, 426 F.3d at 263 (noting that "[e]ven assuming that the absence of complaints about others would establish that Willis was not similarly situated to other patrons, *an issue we need not decide today*, we conclude that the granting of summary judgment was premature") (emphasis added)). Thus, while such considerations may be sufficient within the context of a properly supported motion for summary judgment, they are insufficient to sustain dismissal under Fed. R. Civ. P. 12(b)(6). Accordingly, **Defendants' Motion to Dismiss Amended Complaint (Doc. 40) is DENIED IN PART**, as it relates to plaintiff's class-of-one equal protection claim contained in Count 3 of the Amended Complaint (Doc. 35).

As indicated in Count 4 of the Amended Complaint (Doc. 35), plaintiff alleges that the individual defendants inflicted cruel and unusual punishments by excluding the plaintiff "in her senior year of highschool, from privileges she had earned through her efforts and academic achievement." (Doc. 35, p. 12). However, in **Ingraham v. Wright** the United States Supreme Court held that the 8th Amendment's prohibition against cruel and unusual punishments did not bar the use of corporal punishment in public schools. **Ingraham v. Wright**, 430 U.S. 651, 667 (1977). In doing so, the Court defined the Cruel and Unusual Punishments Clause as follows:

> [T]he Cruel and Unusual Punishments Clause circumscribes the criminal process in three ways: First, it limits the kinds of punishment that can be imposed on those convicted of crimes . . . second, it proscribes punishment grossly disproportionate to the severity of the crime . . . third, it imposes substantive limits on what can be made criminal and punished as such . . . The primary purpose of (the Cruel and Unusual Punishments Clause) has

> always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes.

*Ingraham*, 430 U.S. at 667. In addition, case law interpreting the parallel provision of the West Virginia Constitution also views the Cruel and Unusual Punishments Clause as being directed at the criminal process. See *Smith v. W. Va. Board of Education*, 170 W. Va. 593, 295 S.E.2d 680 (1982). Therefore, Count 4 of the Amended Complaint (Doc. 35) fails to state a claim upon which relief may be granted under existing law. As such, **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **GRANTED IN PART**, as it relates to Count 4 of the Amended Complaint.

Similarly, dismissal is also proper for Count 5 of the Amended Complaint seeking a declaratory judgment finding the School Board's Policy to be unconstitutionally overbroad and/or vague. As a general matter, "once a student graduates, he no longer has a live case or controversy justifying declaratory or injunctive relief against a school board's action or policy." *Cole v. Oroville Union High School Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000). However, there exists an exception to the mootness doctrine for harms capable of repetition yet evading review. Under this exception, a plaintiff who no longer presents a live case or controversy may still maintain suit where "(1) the challenged action is too short in duration to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Cole*, 228 F.3d at 1098 (citing *Spencer v. Kemma*, 523 U.S. 1, 17 (1998)). Here, plaintiff has failed to show that there is a reasonable possibility that as a former student she will be subject to the School Board's Policy again. Thus, plaintiff has failed to meet the requirements for this exception to the mootness doctrine, and as such, has failed to plead

a claim upon which relief may be granted. Therefore, **Defendants' Motion to Dismiss Amended Complaint (Doc. 40) is GRANTED IN PART**, as it relates to Count 5 of the Amended Complaint (Doc. 35).

Conversely, plaintiff's claim for injunctive relief survives the 12(b)(6) inquiry. As indicated in Count 6 of the Amended Complaint (Doc. 35), plaintiff seeks an injunction "requiring the Defendant School Board to expunge the discipline referral, notation of suspension, and any other documents related to the discipline and suspension from her school record and to send corrected copies to any third parties to whom transcripts or school records containing reference to the discipline or suspension were sent." (Doc. 35, p. 13). Moreover, while post-graduate claims for injunctive relief by former students challenging school board actions are generally moot, the continuing nature of the harm alleged is sufficient to present a live case and controversy within the meaning of Article III. Here, after accepting all the allegations of plaintiff's Complaint as true, the presence of such documents in plaintiff's permanent file would rightly be considered a continuing harm to the extent that plaintiff might be required to submit such transcripts to third parties in the future. As a result, the defendants have failed to make the requisite showing to warrant dismissal of plaintiff's claim for injunctive relief under Fed. R. Civ. P. 12(b)(6). Therefore, **Defendants' Motion to Dismiss Amended Complaint (Doc. 40) is DENIED IN PART**, as it relates to Count 6 of the Amended Complaint (Doc. 35).

As a final matter, the Court finds that dismissal is proper with regard to Count 7 of the Amended Complaint (Doc. 35) charging both negligent and intentional infliction of emotional distress. As stated in Count 7, the plaintiff alleges that as a result of the

individual defendants' negligent and/or intentional actions, she has suffered "damage to her reputation, loss of enjoyment of life, severe emotional distress, depression, embarrassment, humiliation, and physical injury all resulting in conscious pain and suffering." (Doc. 35, p. 14). Further, the plaintiff contends that "at graduation practice for the 2005-2006 school year, Defendant Stevens without warning and against her will, hugged Plaintiff and whispered in her ear in front of other students maliciously, and with wanton and reckless disregard, causing her extreme humiliation, embarrassment and emotional distress." ***Id.***

Under West Virginia law, "[a]lthough physical injury is no longer a necessary element of a negligent infliction of emotional distress claim, such a cause of action generally must be premised on conduct that unreasonably endangers the plaintiffs [sic] physical safety or causes the plaintiff to fear for his or her physical safety." ***Brown v. City of Fairmont***, 221 W. Va. 541, 547, 655 S.E.2d 563, 569 (2007) (citations omitted). Here, the sole allegations aimed at the individual defendants concern improper discipline rendered under the School Board's Policy and an improper hug by one defendant at plaintiff's graduation ceremony. As such, the plaintiff has failed to allege conduct of a sufficient nature to entitle her to relief for negligent infliction of emotion distress under West Virginia law.

Similarly, plaintiff has failed to state a claim for intentional infliction of emotional distress. As noted by the Supreme Court of Appeals of West Virginia:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress four elements must be established: (1) that the defendant's conduct was so atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotion distress would result from his

conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."

*Brown*, 655 S.E.2d at 569. After review of the Amended Complaint (Doc. 35), the Court cannot say that the alleged actions of the defendants were "so atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." *See id*. While plaintiff does allege that the defendants improperly subjected her to discipline under the School Board's Policy, the Court finds that such conduct does not rise to the level of that necessary to sustain a cause of action for intentional infliction of emotional distress under West Virginia law. As such, **Defendants' Motion to Dismiss Amended Complaint (Doc. 40) is GRANTED IN PART**, as it relates to Count 7 of the Amended Complaint (Doc. 35).

VI. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40) is DENIED IN PART**, **to the extent of the immunity rationales** contained therein;

2. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40) is GRANTED IN PART**, **as it relates to Count 1** of the Amended Complaint (Doc. 35);

3. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40) is GRANTED IN PART**, **as it relates to plaintiff's due process challenge predicated on exclusion from cheerleading and Charm Review contained in Count 2** of the Amended Complaint (Doc. 35);

4. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **DENIED IN PART**, **as it relates to plaintiff's due process challenges based on lack of notice and sufficiency of appeal contained in Count 2** of the Amended Complaint (Doc. 35);

5. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **DENIED IN PART**, **as it relates to plaintiff's class-of-one equal protection claim contained in Count 3** of the Amended Complaint (Doc. 35);

6. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **GRANTED IN PART**, **as it relates to Count 4** of the Amended Complaint (Doc. 35).

7. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **GRANTED IN PART**, **as it relates to Count 5** of the Amended Complaint (Doc. 35);

8. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **DENIED IN PART**, **as it relates to Count 6** of the Amended Complaint (Doc. 35); and

9. That **Defendants' Motion to Dismiss Amended Complaint (Doc. 40)** is **GRANTED IN PART**, **as it relates to Count 7** of the Amended Complaint (Doc. 35).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

Dated: October 20, 2008.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE